## W. T. McGEHEE et al. *v.* J. H. FIELD.

**Justice of the Peace — Judgments and Execution — Liens of.**

The execution lien provided for in section 841 of the Code of 1871 is not applicable to executions under a judgment of a justice of the peace, and a judgment creditor acquires no lien on the property of the debtor by a delivery of the execution to an officer. Such judgments are a lien only from date of enrollment.[1]

J. H. Field recovered a judgment in a justice of the peace court against Pat Garrett on May 21, 1878, and on the same day had execution issued on it and placed in the hands of the sheriff.

---

. 1

Writs of execution, where there is no judgment lien, shall bind the property of the defendant only from the time of the delivery thereof to the officer to be executed; and if two or more such writs shall be delivered against the same person on the same day, that which was first delivered shall be first satisfied. Such executions shall only bind such property as shall be actually levied upon by the officer, on or before the return day thereof, and of which a written description shall be indorsed on or returned with such execution; and it shall be the duty of the sheriff or other officer, on the receipt of any execution, to indorse thereon the day of the month and the year, and, if necessary, the hour, when he received the same; and for any failure to make such indorsement the sheriff or other officer shall be liable to a penalty of $100, to the use of the plaintiff, recoverable by motion before the court from which the execution issued, after five days' notice, and shall moreover be liable for all damages sustained by any party aggrieved. Code 1871, § 841; Code 1880, § 2206; Code 1892, § 2412; Code 1906, § 2742.

The lien of a judgment within the county, if there be timely enrollment, takes effect from its rendition, and not from the time of the signing of the minutes by the judge. So held in a contest between the judgment creditor and a grantee in a conveyance by the judgment debtor. Clark *v.* Duke, 59 Miss. 575.

In the absence of evidence as to the precise time when a judgment is rendered, it will be presumed to have been at the earliest hour when, according to the course of the court, it may have been rendered; and if a grantee from the debtor claims precedence of the judgment by reason of a fraction of a

The same day, May, 21, Garrett sold and delivered a mule to appellants, Pope & McGehee. On the 25th of the same month the sheriff levied Field's execution on the mule and it was claimed by Pope & McGehee, who interposed their claim. The cause was tried before the judge, a jury having been waived. Judgment was rendered for plaintiff and the claimants appeal.

Appeal from Circuit Court, Bolivar county, B. F. Trimble, Judge.

Reversed and remanded, November 21, 1881.

*Attorneys for appellants, Simrall & Magruder, and E. H. Moore.*

*Attorneys for appellees, Nugent & McWillie.*

Brief of Simrall & Magruder, and E. H. Moore:
In order to present to the court the several provisions of the statute bearing on the point presented in this case, they are here referred to.

---

day, the burden is on him to show the actual time at which the judgment was rendered. Clark *v.* Duke, 59 Miss. 575.

Under the statute of this State as to the enrollment of judgments, a judgment of a Federal Court is not a lien on property of the defendant situated in a county other than that in which it was rendered, and where it has not been enrolled. Hall *v* Green, 60 Miss. 47.

Where several judgments against the same person by the same court are rendered on the same day, priority of lien exists in the order of rendition, and the entries on the minutes of the court are conclusive as to this, and cannot be affected by other evidence. Johnson *v.* Edde, 58 Miss. 664; Herron *v.* Walker, 69 Miss. 707; 12 So. 259.

Where a motion to set aside a judgment is continued, and at a subsequent term is overruled, but the judgment is allowed to stand for a reduced amount, there is during the interval no final judgment from which an appeal lies, or that can properly be enrolled on the day after its rendition, so as to affect the lien of another judgment recovered and enrolled during such interval. Crane *v.* Richardson, 73 Miss. 254; 18 So. 542.

An enrolled judgment takes precedence over a prior unenrolled decree. McKee *v.* Gayle, 46 Miss. 676.

Judgments do not become liens upon property of a defendant out of the county in which they were rendered until abstracts thereof are filed and enrolled in the office of the circuit clerk of the county where such property

Section 1318, Code 1871, enacts the terms on which a lien shall arise under a judgment rendered by justice of peace, and that is, by filing a transcript with the clerk of the Circuit Court and having it enrolled. It then operates as a lien *from date of enrollment.* There is no relating back to date of judgment, as in cases in Circuit Court if enrolled within ten days.

The lien arises from date of enrollment, and is dependent for its *existence* on the enrollment; and that is because parties dealing in respect of the debtor's property are referred to the enrollment book for information as to *judgment liens.*

There was no lien in favor of Field, unless section 841, Code 1871, applies to executions from justices of the peace; looking to the antecedent sections, especially the first, section 837 of article 15, and it would seem that the articles including section 841, applied to the Superior courts, Chancery and Circuit courts, which had *clerks* who issued their process. The chapter of which this article is part, is chapter 8, the title of which is "An Act in relation to Circuit courts."

The general policy of the Legislature is to have a record of liens by judgments, to which creditors could refer, and purchasers, for their information and guidance. It would in a great measure

is situated, and the liens thus acquired have priority in the order of such filing and enrollment without regard to the time of rendition of the judgments. Code 1880, § 1738; Code 1892, § 769. Hamilton-Brown *v.* Walker, 67 Miss. 197; 6 So. 713.

Where plaintiff had obtained a judgment against one D, and defendant had, subsequently to the rendition and enrollment of said judgment, acquired and disposed of certain personal property belonging to D for his own use, and upon which the judgment was a general lien, but which had never been taken in execution under said judgment, plaintiff has no claim against defendant for the proceeds of said personal property. Simpson *v.* Smith Sons Gin & Machine Co., 75 Miss. 505; 22 So. 805.

A judgment of a justice of the peace may be enrolled in any county upon compliance with Code 1892, section 2413, providing for such enrollment on filing an abstract of the judgment with the clerk of the Circuit Court. Jacobs *v.* Johnson, 84 Miss. 450; 36 So. 544.

Under Code 1892, section 2413, providing for their enrollment, judgments rendered by justices of the peace may be enrolled in the office of the clerk of the Circuit Court before the expiration of the five days allowed for appeal therefrom. Minshew *v.* Davidson, 86 Miss. 354; 38 So. 315.

Under Code 1892, section 2413, judgments rendered by justices of the peace may be enrolled in any county in the State. Wise *v.* Keer Thread Co., 84 Miss. 200; 36 So. 244.

defeat this policy to put on such persons the impossible task of asking every constable in the county if he had an execution against a particular person. The task however would not be more onerous than to inquire of the clerks of the Circuit and Chancery courts if they had issued, or of the sheriffs if they had such proofs. In this connection the court is referred to Freeman on Executions, section 199, where it is said that the lien of justices' judgments were not on the same footing in the American States, except two States, as those of Superior courts. In those States where the execution gave lien, as at common law, so great was the hardship of the case as to justices' judgments that, in some of the States, it has been held that the rule has no application to such judgments, and that the lien does not exist until actually levied. Freeman on Executions, § 189.

Good policy would be subserved by so construing the several sections of our statutes so that the lien would only come into being by enrollment in the circuit clerk's office, or by actual levy on the goods. And how inconsistent with this policy of the law, which imparts no lien to a justice's judgment, though duly entered in his court (which is one of record) until it is enrolled in the office of the circuit clerk, and which does not thus relate back, is the proposition that the justice can nevertheless create such a lien by issuing an execution and placing it in his constable's pocket?

In short, we contend that section 841 of Code of 1871 refers exclusively to executions from the Circuit Court. That the liens of a judgment of a justice of the peace cannot be acquired by *delivery* of execution from such justice to a constable; that the common law rule, that the lien of *fi. fa.* binds property from its *testi,* has been abrogated; that the lien of a judgment is purely one of the statute in this State, and is acquired either by enrollment, or delivery of executions on judgments in the Circuit Court, or an enrollment of abstract of judgment from justice of peace court; or by levy of execution from such justice, in which latter event it is hardly accurate to denominate it a *lien,* for then the officer, by the levy, acquires a particular property in the thing seized, and the levy constitutes, itself, presumptive satisfaction of the judgment.

Again, if such a delivery of an execution from the justice constitutes a lien, it would equally be such as against all property, including realty, a proposition which certainly we think cannot

be sustained. Indeed, it would seem that in such case under section 1319, Code 1871, not even the levy of such an execution would constitute a lien, for that section requires that after judgment, and *after* the levy of the execution, a complete transcript shall be made out and *filed* with the circuit clerk; and if this was intended to constitute record evidence of title, as seems to be the purpose of the law, it surely only becomes such when lodged for record as required.

If, then, the mere issuance and delivery of a writ to a constable by a justice of the peace will not operate as a lien upon land, from that date and act, upon what reason or by what construction of the statute would a different rule apply as to its effect upon personal property ?

Brief of Nugent & McWillie:

On the 20th of May, 1875, Field recovered judgment against Patrick Garrett for $147.85, balance due on a note given for one mouse-colored mare mule. This judgment was filed with the circuit clerk of Bolivar county and entered upon the judgment roll of his office on the 27th of May, 1878. On the 21st of May, 1878, the affidavit as required by statute was made, and an execution was promptly issued and delivered to the sheriff of the county. On the 25th of May, 1878, it was levied upon the mouse-colored mare mule that represented the consideration of the note upon which the judgment was recovered; and on the 27th of May, 1878, the mule was advertised for sale. On the 1st of June, 1878, appellants interposed a claim for the mule, gave bond, made the affidavit, and took the mule. Issue was joined as to the right of property, which resulted in a verdict for the plaintiff in execution. There was an appeal and a judgment for claimants, which was set aside and a new trial granted. On the new trial the court rendered judgment in favor of the plaintiff in execution. Motion for new trial by claimant was overruled and this appeal was prosecuted.

It is quite manifest that the execution in favor of Field became a lien upon the mule from the time of its delivery to the sheriff to be executed; and as it was received by the sheriff on the 21st of May, 1878, there is no difficulty as to the day on which it became a lien. Code of 1871, § 841.

It is true that McGehee & Pope's judgment was recovered

February 10, 1878, but it was not enrolled until May 25, 1878, four days after Field's execution was delivered to the sheriff to be executed. Aside from this, the judgment, even if enrolled, was not a lien upon property exempt by law from execution, as this mule was. Code 1871, § 1318.

The mule in this case was not exempt as to Field's debt and his judgment, if enrolled, would have been a lien upon it. The execution was a lien from the moment of its delivery to the officer. Code 1871, § 2142.

Mr. E. C. Field fixes the hour of the day when the execution was delivered to the sheriff. On the 21st of May, 1878, he was sitting on the courthouse gallery in Rosedale, and saw Garrett leave town riding the mule in question in the direction of McGehee & Pope's store. A few minutes after E. H. Moore told him to look out or the mule would be lost. As agent for plaintiff, he made the affidavit required by law, secured the issuance of an execution, and immediately placed it in the hands of the sheriff. The store of McGehee & Pope was eight or nine miles from Rosedale, and when he gave the execution to the sheriff Garrett could not have been more than a mile and a half distant from Rosedale. Prior to this he had been watching Garrett and the mule, and saw the mule on his place adjoining Rosedale every day. The record shows the judgment recovered by Field was for the purchase money of the mule. The evidence of Mr. McGehee for the claimant does not conflict with this statement of Mr. E. C. Field, and there hardly seems to be a point in the case. The note credited by McGehee had been reduced to judgment before. The affidavit of newly discovered evidence does not vary the question mooted one whit. Even if true, it would not have varied the result; and the parties show no reason why they should not bear the consequences of their own neglect. The result is right; the mule goes to pay its purchase money and is not devoted to other uses from which the law had exempted it.

OPINION.—CAMPBELL, J.:

The question presented by this record is, whether or not section 841 of the Code of 1871 embraces executions issued by a justice of the peace. Its language is broad enough to include all writs of execution, but the inquiry is a proper one, whether executions issued by justices of the peace were in the contemplation of the

Legislature in enacting it, or was it intended to include only writs issued from the Circuit and Chancery courts. *Noscitur a sociis* is a familiar maxim, and is useful in construction.

The prototype of section 841 of the Code of 1871 is the eighth section of the Act of June 22, 1822, Hutch. Code, p. 899. Its object was to change the common law rule, which made executions a lien from their *teste,* which was the term before issuance, and might be a day before the judgment was rendered, by reason of the *teste* being the first day of term, which was the case in this State in 1822. Section 841 of the Code of 1871 was transferred from the Code of 1857, where it was found adopted from the Act of 1822 above cited, with a slight change as to the penalty on the officer who should fail to mark on the process the time of its receipt by him. Art. 270, p. 526, of the Code of 1857.

By that article the officer, for any failure to make the required indorsement on the writ, was made liable to a penalty of $100 to the use of the plaintiff, recoverable by motion before the court from which the execution issued. This makes it certain that the article in the Code of 1857 (represented by section 841 in the Code of 1871) did not embrace executions issued by justices of the peace, because at that time and under that Code $100 was a sum beyond the jurisdiction of a justice of the peace, and there is no instance in it of an attempt to confer on a justice of the peace jurisdiction of such an amount.

Did the fact that by the Constitution of 1869 the jurisdiction of justices of the peace was enlarged to $150 in amount, enlarge the scope of section 841 in the Code of 1871, transferred from the Code of 1857, where it certainly did not apply to executions issued by justices of the peace? The Code of 1857 contains "An Act in relation to justices of the peace," in which their civil jurisdiction and the mode of its exercise are prescribed. Executions to enforce their judgments are specifically provided for in this act, and the effect of their judgments and executions to bind the goods and chattels of the defendant in such a judgment is expressly declared to be from the *date of the judgment.* Article 29, p. 408, Code of 1857.

This Code contains various provisions with respect to sales by constables, who are the executive officers for justices of the peace provided by law, and for the execution and return of executions, and payment of the proceeds by constables, which relate

exclusively to executions issued by justices of the peace, Code of 1857, article 177, p. 135, to article 182, which shows that under the Code of 1857 an effort was made to provide a complete set of rules applicable to the judgments and executions of justices of the peace, and that resort must be had to these regulations to ascertain the effect of such judgments and executions, and that regulations adopted for other courts are not to be applied to the judgments and executions of justices of the peace, except where in the nature of things or from a proper construction they are plainly applicable. The acts in relation to justices of the peace contained in the Code of 1857 were transferred nearly entire to the Code of 1871. Article 20, p. 408, of the former Code, was changed by section 1318 of the latter, so as to declare that "all judgments rendered by justices of the peace shall operate as a lien  *  *  *  ; *provided,* that an abstract of the judgment shall be filed with the clerk of the Circuit Court of the county wherein the property is situated, and entered upon the judgment roll  *  *  *  ; said lien to commence from the date of the enrollment," etc.

Manifestly, we think it was the legislative purpose to make judgments by justices of the peace liens from the date of enrollment, and that executions should not be liens at all.

From its history, association and position, and from the specific regulations applicable to the judgments rendered, and executions issued by justices of the peace, indicating a design to provide a complete system for that class of remedies, we conclude that section 841 of the Code of 1871 has no application to them. It follows from these views that the plaintiff in the execution did not acquire a lien on the mule by delivering the execution to the officer, and that when McGehee & Pope purchased the mule it was not bound by a lien in favor of Field.

Fortunately, the question here discussed, beyond the decision of this case, has ceased to be of practical importance, since under the Code of 1880 executions, where there is no judgment lien, bind property only from the levy of the execution. It seems strange that the law should ever have been different.

*Judgment reversed,* and cause remanded for a new trial.